**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

No. 3:18-cv-00449

MARTIN A. ARGUELLO, APPELLANT,

v.

DYLAN LAFAVERS, APPELLEE.

**MEMORANDUM OPINION AND ORDER**

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

Martin Arguello appeals the final judgment of the United States Bankruptcy Court for the Southern District of Texas, Galveston Division, in an adversary proceeding denying the dischargeability of debt under 11 U.S.C. § 523(a)(6).[1] For the reasons set forth below, the court affirms in part, vacates in part, and remands for further proceedings consistent with this opinion. Specifically, the court agrees that Arguello's injurious conduct was both willful and malicious, and so affirms the judgment in this respect. But the court vacates the bankruptcy court's ruling that the debt was not dischargeable. On remand, the bankruptcy court shall determine

---

[1] The claim asserted against Arguello in the underlying adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The bankruptcy court had constitutional authority to enter a final judgment in the underlying adversary proceeding, and this court has subject-matter jurisdiction over this dispute. *Id.* § 158.

1

whether Arguello's actions were sufficiently justified under the circumstances such that it renders the debt dischargeable under 11 U.S.C. § 523(a)(6).

I. Background

A. Factual Background

The appellee, Dylan LaFavers, began living with his mother's then-boyfriend, now husband, Arguello, in mid-2014. Record on Appeal[2] ("ROA") at 22; Dkt. 7 at 6.[3] A series of disagreements and confrontations led to LaFavers moving from the main house to a separate guesthouse located on Arguello's property. ROA at 45. The parties dispute whether LaFavers was "banned" from entering the main house. *See* ROA at 106:7–106:10.

On the evening of December 9, 2015, LaFavers, who was 17 years old, was walking from the guesthouse to the main house to get a glass of water. Arguello confronted him outside and demanded that he return to the guesthouse. ROA at 87:6–87:12, 88:16–88:19, 141:21–142:3. The parties present different accounts of the altercation that ensued.

According to Arguello, he was outside around sundown, about to feed his dogs, when he saw LaFavers walking towards the main house. *See* ROA at 141:21–142:3. Arguello ordered LaFavers to return to the guesthouse. When LaFavers

---

[2] The Record on Appeal can be found at Docket Entry No. 5.

[3] Page number citations to the documents that the parties have filed refer to those that the court's electronic case-filing system automatically assigns.

ignored him, Arguello—who had served in the United States Army Reserve[4]—felt threatened and removed from his pocket a loaded 9mm Beretta. ROA at 141:21–143:24. Arguello then fired what he describes as two "warning shots" into the ground near his own feet. ROA at 142:4–148:23. LaFavers was unfazed by the first warning shot and "just kept walking . . . [n]ot necessarily directly at [him] . . . [but] in the same general direction." ROA at 149:19–150:6. After the second warning shot, LaFavers "rushed" at Arguello from roughly twenty feet away and "the next thing [Arguello] knew [he] was getting pummeled in the face and head." ROA at 153:19–154:10. Notably, Arguello does not contend that LaFavers knocked him to the ground at any point during their altercation. ROA at 167:2–167:6.

Arguello discharged the firearm at least twice more during their physical altercation, striking LaFavers in his forearm and bicep. Dkt. 7 at 7. Arguello is adamant, however, that he did not intend to harm LaFavers. "It was only while being beaten that [he] unintentionally discharged the firearm twice in instantaneous succession." *Id.*

LaFavers paints a very different picture. He claims Arguello first fired one shot in the air before quickly firing a second into the ground near LaFavers' feet. ROA at 91:22–92:10. Arguello then approached to within "five to seven feet," "point[ed] the gun at [LaFavers'] face," and told him to "walk away." ROA at 93:12–94:9. As LaFavers attempted to retreat to the guesthouse, Arguello fired a third

---

[4] ROA at 130:12–130:23; *see* ROA at 122:1–122:4.

3

bullet inches from his feet. ROA at 93:2–95:2 (testifying the third gunshot propelled rocks and gravel around LaFavers' feet into his calves and legs). "[T]errified for [his] life," LaFavers defended himself, striking Arguello twice in the face before sustaining the first of two gunshot wounds. ROA at 95:3–96:6. LaFavers disputes Arguello's claim that the injurious gunshots were unintentional. He instead argues Arguello attempted to kill him—firing three gunshots during their physical altercation, one of which missed. LaFavers adds that Arguello would have succeeded had his gun not jammed when he tried to shoot LaFavers in the stomach. ROA at 96:4–96:24. As further evidence of Arguello's malicious intent, LaFavers says he could hear the "clicks" as Arguello attempted to fire the jammed gun as LaFavers fled toward the guesthouse. ROA at 97:16–98:4.

Whatever the true sequence of events, it is undisputed that a physical confrontation occurred on the evening of December 9, which resulted in LaFavers sustaining two gunshot wounds.

### B. Procedural History

LaFavers sued Arguello in state court for damages he suffered as a result of the December 9 altercation.[5] ROA at 22. While the state-court proceedings were pending, Arguello filed a voluntary petition seeking relief under Chapter 7 of the United States Bankruptcy Code.[6] Dkt. 5–1. LaFavers timely filed a proof of claim

---

[5] *Collin LaFavers, as next of friend of D.L., a minor v. Martin Arguello*, Cause No. 16-cv-0434, in the 122nd Judicial District, Galveston County, Texas.

[6] *In re Martin Arguello*, Case No. 17-80324, in the United States Bankruptcy Court for the Southern District of Texas, Galveston Division (Norman, J.).

4

and, on February 5, 2018, commenced an adversary proceeding against Arguello, objecting to the dischargeability of his claim against Arguello.[7] ROA at 9–14.

Arguello stipulated to liability and damages in the amount of $2,036,728.22 but argued that his liability was not the type that is excepted from discharge under 11 U.S.C. § 526(a)(6). Dkt. 5–2; ROA at 20–21. So, the only narrow issue for the bankruptcy court to decide in the adversary proceeding was whether Arguello "willfully and maliciously" injured LaFavers.

On August 16, 2018, the bankruptcy court held a status conference and set October 1 as the parties' discovery deadline. *See* ROA at 4. A week later, the bankruptcy court ordered another status conference for October 19. *See id.*

At the October 19 status conference, the court set November 19 as the trial date and issued a scheduling order with various pre-trial deadlines. ROA at 18-19. Although the scheduling order mistakenly identified the trial date as "November 19, 2019"—instead of 2018—both parties understood the actual trial was just one month away. ROA at 18. Indeed, on November 14, the parties filed a joint pre-trial statement—which they would not have done if trial were still a year away. ROA at 20–26; *see* ROA at 18 (requiring the parties to file a joint pre-trial statement "[n]o later than five (5) days before the date of trial") (emphasis in original). Arguello did not list any trial exhibits in the joint pre-trial statement. ROA at 25.

---

[7] Adversary Proceeding No. 18-8003.

The next day, the bankruptcy court *sua sponte* reset the trial for December 3. ROA at 27 ("In [its scheduling order], the Court mistakenly set trial for November 19, 2019, instead of November 19, 2018. Due to the possibility the parties may have been confused [by] this mistake, the Court will grant a short continuance of the trial.").

On November 29—fifty-nine days after discovery closed and ten days after trial was originally scheduled to commence—Arguello filed a cursory, three-paragraph emergency motion requesting a continuance. ROA at 28-30. The main justification for the continuance was Arguello's counsel's preferential trial setting in an unrelated state-court matter that conflicted with the new trial date. *See id*. Without providing any further explanation, Arguello ended his motion with this sentence: "In addition, [Arguello] is attempting to obtain documents and photographs from the police files that are relevant to the case." ROA at 29. The bankruptcy court denied Arguello's request, citing ample notice of the October 1 discovery cut-off and upcoming trial. ROA at 32-33.

The trial began and ended on December 3. *See* ROA at 5. Arguello neither offered any exhibits into evidence nor raised any evidentiary or discovery dispute by written or oral motion. *See generally* ROA at 66-191 (trial transcript). Instead, Arguello relied only on his oral testimony to dispute that he had acted willfully and maliciously when he shot and injured LaFavers. *See* ROA at 115-172.

At the end of the trial, the bankruptcy court asked the parties to submit post-trial briefs on one particular issue:

6

> [T]he issue basically really is in the Court's mind -- the shots that occurred after the physical altercation between the parties. Quite clearly we can say that all of the activity was reckless, all right? Recklessness, unfortunately does not get you over the hump relative to being a dischargeable debt.
>
> However, the Court is very, very aware that the burden of proof is only by a preponderance of the evidence. And quite clearly -- before the two shots that injured [LaFavers] -- the three shots before that quite clearly were willful.
>
> And whether that willfulness carries over to the two shots or whether [the Court] can infer that the two shots thereafter are willful -- [the Court will] have to make a determination on that.

ROA at 186:6–186:20.

On December 20, after the parties filed their post-trial briefs,[8] the bankruptcy court entered judgment for LaFavers, concluding the greater weight of the evidence showed an objective substantial certainty of harm when Arguello fired his gun at LaFavers. ROA at 44-50.[9] Arguello then filed this appeal.

## II.  Issues Presented

Issue 1: Whether LaFavers established by a preponderance of the evidence each element of nondischargeability under 11 U.S.C. § 523(a)(6).

Issue 2: Whether the bankruptcy court was required to consider Arguello's state of mind at the time he fired the gunshots that injured LaFavers to determine that he possessed the subjective intent to cause injury to LaFavers.

Issue 3: Whether the bankruptcy court abused its discretion in denying Arguello's emergency motion for continuance.

---

[8] ROA at 34-43.

[9] On February 12, 2019, the bankruptcy court entered an amended final judgment, clarifying that the term "damages" in its original final judgment referred to those damages to which Arguello stipulated before trial. ROA at 60-61.

### III. Standard of Review

District courts review bankruptcy-court rulings and decisions under the same standards employed by federal courts of appeals: a bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law, conclusions on mixed questions of law and fact, and application of law to the facts are reviewed *de novo. See Nev. Prop. 1 LLC v. D'Amico (In re D'Amico)*, 509 B.R. 550, 555 (S.D. Tex. 2014) (Lake, J.); *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003); *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir.), *cert. denied*, 531 U.S. 871 (2000).

"A factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)*, 416 F.3d 394, 402 (5th Cir. 2002). Rather, "[a] finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re Niland*, 825 F.2d 801, 806 (5th Cir. 1987) (citation omitted). "When a finding of fact is premised on an improper legal standard, or a proper one improperly applied, that finding loses the insulation of the clearly erroneous rule." *Id.* (citation omitted).

When reviewing a bankruptcy court's conclusions of law *de novo*, a district court may affirm the decision on any ground supported in the record and need not agree with every conclusion reached by the bankruptcy court. *Lanier v. Futch*, No.

8

3:11CV415HTW-LRA, 2012 WL 12883771, at *4 (S.D. Miss. Mar. 31, 2012) (citing *In re Caldo, Inc.*, 199 B.R. 1, 2 (S.D. N.Y. 1996), *aff'd sub nom. Virginia Elec. & Power Co. v. Caldor, Inc.-New York*, 117 F.3d 646 (2d Cir. 1997)).

Because trial courts enjoy wide discretion in granting or denying continuances, *see Command-Aire Corp. v. Ontario Mech. Sales and Serv., Inc.*, 963 F.2d 90, 96 (5th Cir. 1992), the denial of a continuance will be affirmed unless the denial is arbitrary or clearly unreasonable. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 721 (5th Cir. 1995) (citations omitted); *In re Triple E Transp.*, 169 B.R. 368, 372 (E.D. La. 1994).

As Arguello's first appellate issue challenges the bankruptcy court's factual findings—that the injuries he inflicted were willful and malicious—it is reviewed for clear error. His second issue, which presumes the bankruptcy court was required to consider his subjective intent before finding an injury willful and malicious under § 523(a)(6), is reviewed *de novo*. *See Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 508 (5th Cir. 2003) ("The interpretation of Section 523(a)(6) is a question of law and is reviewed *de novo*.") (citing *Hickman v. Texas (In re Hickman)*, 260 F.3d 400, 401 (5th Cir. 2001)). Finally, the bankruptcy court's denial of Arguello's motion for continuance is reviewed for abuse of discretion.

IV. Discussion

An individual may not receive a discharge from any debt "for willful and malicious injury by the debtor to another." 11 U.S.C. § 523(a)(6). The party

9

asserting that a debt is nondischargeable must prove its claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991); *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005).

"[A]n injury is 'willful and malicious' where there is *either* an objective substantial certainty of harm *or* a subjective motive to cause harm." *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998) (emphasis added). Courts commonly refer to the two prongs of this objective/subjective test as the "objective substantial certainty" prong and "subjective motive" prong. To establish a debt is *nondischargeable*, a movant need only satisfy *one* prong of the test. But to find a debt is *dischargeable*, a court must consider whether the injury was willful and malicious under *both* the objective-substantial-certainty prong and subjective-motive prong.

The subjective-motive prong applies when an actual intent to cause injury is present. *Mouton v. Dehler (In re Dehler)*, 593 B.R. 301, 307 (Bankr. E.D. La. 2018). The objective-substantial-certainty prong, however, assumes intent to cause injury when a third party can objectively conclude that harm would occur. *Id.* Stated differently, under the objective-substantial-certainty prong, a court can infer the debtor's intent to injure.

The bankruptcy court found Arguello's debt was not dischargeable under the objective-substantial-certainty prong. ROA at 47–48. But both parties argue (or at least accept) that the bankruptcy court found the debt nondischargeable under both the objective-substantial-certainty prong and the subjective-motive prong.

Dkt. 8 at 22–23; *see* Dkt. 7 at 12–14. That is not the case. Rather, the bankruptcy court inferred Arguello's subjective intent to injure LaFavers by analyzing whether Arguello's actions, when viewed from that of a reasonable person, were substantially certain to result in harm. ROA at 47–48.

Because Arguello specifically contends the bankruptcy court was required to consider his state of mind at the time he shot LaFavers to infer that he possessed the subjective intent to cause harm, some discussion of the origins of *Miller's* objective/subjective test is in order. *See* Dkt 7 at 12–14; Dkt. 9 at 6–9;

For some time, the Fifth Circuit had held that the term "malicious" meant "without just cause or excuse" and that "willful" meant that the actor intended the act which resulted in the injury to the plaintiff. *See Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241, 245 (5th Cir. 1983). The court somewhat modified that formulation in *Corley v. Delaney (In re Delaney)*, holding that "for willfulness and malice to prevent discharge under § 523(a)(6), the debtor must have intended the actual injury that resulted." 97 F.3d 800, 802 (5th Cir. 1996). But the court added that evidence that the debtor intentionally performed an action that either necessarily caused or was substantially certain to cause the injury that resulted would establish the "intent to injure" element. *Id.*

Two years later, the Supreme Court decided *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). There, the Court ruled that to prevail under § 523(a)(6) a plaintiff must prove that the defendant intended to cause the injury in question. *Id.* at 62. Not

long after, the Fifth Circuit was asked to examine its standard, as laid out in *Delaney*, in light of *Kawaauhau. See In re Miller*, 156 F.3d at 598.

In *Miller*, the court aggregated "willfulness" and "maliciousness" into a unitary concept, holding that an injury meets the requirements of § 523(a)(6) "where there is *either* an objective substantial certainty of harm *or* a subjective motive to cause harm." *Id.* at 606 (emphasis added); *In re Williams*, 337 F.3d at 509 ("The test for willful and malicious injury under § 523(a)(6), thus, is condensed into a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor."); *Berry v. Vollbracht (In re Vollbracht)*, 276 F. App'x 360, 361–62 (5th Cir. 2007) ("Because debtors generally deny that they had a subjective motive to cause harm, most cases that hold debts to be nondischargeable do so by determining whether '[the debtor's] actions were at least substantially certain to result in injury.'").

Nine years after *Miller*, the Fifth Circuit refined the objective/subjective test by adding an additional inquiry: "for an injury to be 'willful and malicious' it must satisfy our two-part test *and not be sufficiently justified under the circumstances* to render it not 'willful and malicious.'" *In re Vollbracht*, 276 F. App'x at 361–62 (emphasis added).

12

## A. Whether LaFavers Established by a Preponderance of the Evidence Each Element of Nondischargeability Under § 523(a)(6)

The bankruptcy court, relying on the objective-substantial-certainty prong of the objective/subjective test, held that Arguello acted both willfully and maliciously in shooting LaFavers because, objectively, the two gunshots that struck LaFavers were substantially certain to cause injury. ROA at 48.

Again, under the objective-substantial-certainty prong, courts are expected to "analyze whether the defendant's actions, which from a reasonable person's perspective were substantially certain to result in harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 335 (Bankr. W.D. Tex. 2009).

### 1. Objective Substantial Certainty of Harm

Arguello contends the injurious gunshots were not willful because he "could have easily caused even more serious bodily injury or death had that been [his] intent," and were not malicious because they occurred while LaFavers was attacking him. Dkt. 7 at 10–11. The court finds his arguments unpersuasive.

The incident itself, when analyzed from the perspective of a reasonable person, was substantially certain to cause harm. *See In re Dehler*, 593 B.R. at 307 ("The [objective-substantial-certainty] prong assumes intent to cause injury when a third party can objectively conclude that harm would occur."). This is true

whether one believes Arguello's or LaFavers' version of events.[10] Arguello would have the court believe that LaFavers was the aggressor; that he fired the shots that injured LaFavers unintentionally; and that the gunshots were a reflexive result of being struck in the face. But this was not the case of a loaded gun accidentally discharging once and hitting someone, nor was it the case of two men wrestling for control of a firearm. Arguello, who testified at trial that LaFavers' punches did not send him to the ground, pulled the gun's trigger repeatedly—at least five separate times—striking LaFavers twice. *See* ROA at 167:2–167:6.

Moreover, Arguello was the aggressor who, without provocation, intentionally fired, at a minimum, two gunshots at or near an unarmed teenager's feet. *See* ROA at 141:21–143:24, 155:25–158:11. Why Arguello—a man with military training—brandished his firearm at all that fateful evening is a mystery. ROA at 130:12–130:23; *see* ROA at 122:1–122:4. LaFavers—who was 5'9" and weighed about 150 pounds—did not pose a threat to Arguello. *See* ROA at 155:25–156:9. Indeed, Arguello testified that, before December 9, LaFavers had never "punched [him], struck [him,] or hit [him] in any way." ROA at 118:3–118:5. And while Arguello also testified that he felt threatened by LaFavers, both before and at the time of the incident, he was hardly able to articulate a plausible explanation *why*. He could only offer a few instances when LaFavers supposedly lashed out at him

---

[10]Unlike LaFavers, Arguello was unable to recall much of the incident itself or the events leading up to the incident. *Compare* ROA at 124:23–125:11, 141:3–141:13, 167:2–167:9, *with* ROA at 86:5–99:9; *see also* ROA at 46 n.1.

14

verbally. *See, e.g.,* ROA at 116:9–118:5, 141:17–142:24, 153:19–154:10, 155:11–158:11, 160:11–161:14.

Simply put, the court finds no basis to overturn the bankruptcy court's holding that, based on the totality of the evidence and testimony, Arguello acted both willfully and maliciously in shooting LaFavers. ROA at 48. Objectively, the two gunshots that struck LaFavers were substantially certain to cause injury. *See In re Williams*, 337 F.3d at 509 (an injury is willful and malicious if the plaintiff proves "either an objective substantial certainty of harm or a subjective motive to cause harm.").

### 2. Whether Arguello's Actions Were Sufficiently Justified Under the Circumstances

Though the court affirms the determination that Arguello's actions had an objective substantial certainty of causing harm, that does not end the analysis. For a debt to be nondischargeable under § 523(a)(6), the plaintiff must satisfy the two-prong test *and* the defendant must fail to prove that he was "sufficiently justified under the circumstances." *In re Vollbracht*, 276 F. App'x at 362. Stated differently, the Fifth Circuit has constructed an exception, or additional step, to the general two-prong test.

The "substantially justified" exception is "not limited to the doctrine of self-defense." *Wise v. Peterson (In re Peterson)*, 452 B.R. 203, 233 (Bankr. S.D. Tex. 2011) (Bohm, J.). Indeed, "it is a more expansive affirmative defense, allowing a bankruptcy court to engage in a fact-specific analysis to determine whether 'an

15

injury otherwise falling under [the] two-part test is sufficiently justified to render it not willful and malicious.'" *Id.* (quoting *In re Vollbracht*, 276 F. App'x at 362 n.8).

The bankruptcy court did not consider whether Arguello's actions were sufficiently justified under the circumstances. *See* ROA at 44-49. When a lower court has failed to reach a question that becomes critical to review on appeal, an appellate court may sometimes resolve the issue on appeal instead of remanding. *See, e.g., Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago*, 93 F.3d 1064, 1072 (2d Cir. 1996).

This procedure is appropriate when the factual record is developed and the issues provide purely legal questions, upon which an appellate court exercises plenary review. *McVey v. Johnson (In re SBMC Healthcare, LLC)*, 547 B.R. 661, 683 (S.D. Tex. 2016) (Lake, J.). In such a case, an appellate court can act just as a trial court would; the reviewing court addressing the disputed issue in the first instance is judicially efficient. *See id.* (citing *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1138 & n.11 (7th Cir. 1986)). Stepping into the trial court's shoes is inappropriate and unwise, however, when the question requires an exercise of discretion or fact-finding. *Id.* (citing *Curtiss-Wright Corp. v. Gen. Electric Co.*, 446 U.S. 1, 10 (1980)).

Whether Arguello's actions were sufficiently justified under the circumstances is a question that requires discretion and fact-finding. *See In re*

*Peterson*, 452 B.R. at 233. Accordingly, remand on this specific issue is appropriate.

### B. Whether the Bankruptcy Court Was Required to Consider Arguello's State of Mind

Arguello's second issue on appeal—that the bankruptcy court "committed error when it considered the *entire* casual chain of events leading to [the] injury as relevant to the non-dischargeability inquiry under [§] 523(a)(6)"—warrants only a brief discussion. Dkt. 9 at 6 (emphasis in original); *see also* Dkt. 7 at 12–14. Arguello contends that the only intent relevant to whether his conduct was willful and malicious is his intent at the time he fired the gunshots that injured LaFavers. *Id.*

Unsurprisingly, Arguello cites no authority that would require a court to "conduct a discrete assessment of [Arguello's intent] during the final discharges of the firearm that led to [LaFavers'] injuries." *See id.* at 6–9; Dkt. 7 at 12–14. Rather, as thoroughly explained above, because debtors generally deny that they had a subjective motive to cause harm, courts may infer a subjective intent to inflict a willful and malicious injury by analyzing whether the defendant's actions, when viewed from that of a reasonable person, were substantially certain to cause harm. *In re Powers*, 421 B.R. at 335.

Without belaboring the point, Arguello's actions, when viewed from a reasonable person's perspective, were substantially certain to result in harm to LaFavers. Therefore, under the objective-substantial-certainty prong of *Miller's*

17

objective/subjective test, a court can infer Arguello's subjective intent was to inflict a willful and malicious injury to LaFavers. *See id.* Having conducted a *de novo* review of the relevant law and the bankruptcy court's application of those legal principles to the facts, the court finds no error. *See In re Williams*, 337 F.3d at 508 ("The interpretation of Section 523(a)(6) is a question of law and is reviewed *de novo.*") (citation omitted); *In re D'Amico*, 509 B.R. at 555 ("The [b]ankruptcy [c]ourt's conclusions of law and conclusions on mixed questions of law and fact and application of law to the facts are reviewed *de novo.*").

### C. Whether the Bankruptcy Court Abused its Discretion in Denying Arguello a Continuance

Finally, Arguello argues the bankruptcy court abused its discretion when it denied his emergency request for a continuance to obtain "forensic evidence related to the police investigation and the grand[-]jury inquiry." *Id.* at 9; *see* Dkt. 7 at 14. A lower court's discretion to grant or deny a continuance is extremely wide, and courts of review will affirm unless it was arbitrary or clearly unreasonable. *Avenell*, 66 F.3d at 721.

The court finds no abuse of discretion. The parties' discovery cut-off date was October 1. *See* ROA at 4. Arguello did not file his cursory, three-page "emergency" motion requesting a continuance until November 29—fifty-nine days after discovery closed and ten days after trial was originally scheduled to begin. ROA at 28-30. The crux of Arguello's motion was his counsel's unavailability due to a preferential trial setting in another court. ROA 28-29. Without providing any

18

further explanation, Arguello added he was also "attempting to obtain documents and photographs from the police files that are relevant to the case." ROA at 29.

As the bankruptcy court correctly noted in its order denying the continuance, Arguello had ample notice of the October 1 discovery cut-off and upcoming trial. *See* ROA at 32-33. The bankruptcy court's decision was neither arbitrary nor clearly unreasonable. *See generally Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (finding no abuse of discretion in denying continuance when the plaintiff "offered no justification for its delay").

***

For the reasons stated above, the court affirms in part and vacates in part the bankruptcy court's judgment, and remands for further proceedings consistent with this opinion. Specifically, the court agrees that Arguello's injurious conduct was both willful and malicious and so affirms the judgment in that respect. But the court vacates the ruling that the debt was not dischargeable. On remand, the bankruptcy court shall determine whether Arguello's actions were sufficiently justified under the circumstances such that the debt is dischargeable under 11 U.S.C. § 523(a)(6). *See In re Vollbracht*, 276 F. App'x at 361–62.

SIGNED on Galveston Island on this, the 24th day of March, 2020.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE